186 So.2d 121

Genie S. BRANNON

v.

Mack Engle BRANNON.

7 Div. 648.

Supreme Court of Alabama.

April 28, 1966.

Roy D. McCord, Gadsden, for appellant.

Rowan S. Bone and Hugh H. Smith, Gadsden, for appellee.

PER CURIAM.

Appellant, on June 14, 1963, filed in the Circuit Court of Etowah County, in Equity, her complaint against appellee seeking separate maintenance. Respondent filed his answer and cross bill. The answer denied the allegations of the complaint. The cross bill prayed for divorce a vinculo matrimonii from the wife on the grounds that while the parties were living together as husband and wife, there was reasonable apprehension on his part that appellant would commit actual acts of violence upon his person attended with danger to his life or health; that the appellant has made numerous threats of hitting, beating and slapping appellee, and he verily believes that appellant would commit such acts of violence upon his person. An amendment to the cross bill avers that they were married on January 9, 1937 and they lived together as man and wife until, to wit, April 15, 1960, when they separated.

The trial court, on testimony taken ore tenus, granted appellee an absolute divorce from appellant, and in the decree inserted a paragraph as follows:

"It is further ordered, adjudged and decreed by the Court that all other ques-

tions of alimony, support and property settlement be, and the same hereby are, held in abeyance pending further orders of the Court.

"This the 3rd day of April, 1964."
Appellant here appeals from the final decree and assigns as error:

"1. The trial court erred in rendering its final decree in this cause."

There are other assignments which are argumentative, and some others do not present a ruling of the trial court for review. Assignment No. 1 presents for review the action of the trial court in granting appellee a divorce.

It appears from the record before us that Mack Engle Brannon, complainant, on September 8, 1959, filed in the Circuit Court of Etowah County, in Equity, his bill for an absolute divorce on the ground of cruelty. The trial court, Judge Pittman, after hearing the evidence ore tenus, denied relief and dismissed the bill. The parties went back together to effect a reconciliation.

It also appears from the evidence in that case (the evidence is also in the record) that there was a marked similarity between the acts of alleged cruelty on the part of Mrs. Brannon as in the instant case. Complainant testified as to verbal tilts between him and his wife; their incompatibility with respect to the financial management of their affairs; suspicion on the part of the wife that her husband was having sexual intimacies with other women; their own sexual incompatibility and desires, and other differences. Complainant testified, as here, that his wife scratched him and made unfulfilled threats of harm. He testified that his wife was not a mean or immoral woman. Further, on the first trial, he testified:

"Q. You didn't leave your wife because you thought it was dangerous for you to live with her?

"A. No.

"Q. She never threatened to shoot you or poison you?

"A. No, I left my wife because of the fact I figured after her telling me that she was unhappy and that she wasn't getting any money, she told her mother that the reason she was going to leave me is that I wasn't giving her money. * * *"

In the instant case, we quote from the oral testimony of appellee (cross-complainant):

"Q. Now then, during that period of time, I wish you would tell the Court if you all had any fusses, or if anything happened.

"A. Yes, we would get in arguments, as usual. She would start in on me about something, and I would pick it up, and the next thing we knowed (sic) we was in an argument, and she would be fighting and scratching and raising sand, and telling me to get out of there before she picked up something and knocked me in the head with it.

"Q. How many times did that happen, if you can recall, after you all went back together and before the early part of 1960?

"A. Oh, three or four times.

* * * * * *

"Q. And on any of those occasions, did she ever claw—or on one of those occasions, did she ever claw the front of your—ever claw you in the chest?

"A. Yes, she did.

"Q. Would you tell the court whether or not she left any marks on you?

"A. Yes, she left marks on my chest.

"Q. And did—did the marks bleed?

"A. Yes, sir, they bled.

"Q. And cause a sore, and cause it to become scabbed over?

"A. Yes, sir, scabbed over.

"Q. Now then, did she—other than scratching you, did she do anything else?

"A. Nothing other than just raising a lot of sand.

"Q. Well, what would she say to you? You say that one of these times she said she would get something and knock you in the head with it?

"A. Well, she was always making remarks like that. In other words, just more or less threatening, in the row.

"Q. And did she ever do anything like knocking you in the head?

"A. No, nothing except scratch and slap and hit.

"Q. What would these arguments come up about or just start about, Mack?

"A. Because I wasn't doing the way she wanted me to do. * * *

"Q. And did she on occasion, or has she on many occasions accused you of running around with women?

"A. She always has."

In the instant case, the testimony of a competent physician, Dr. Paul Simpson, shows that the wife is in a delicate state of health due to removal of a cancer of the colon, lump in the breast, arthritis, arteriosclerosis, and other ailments, all existing at the time of the alleged conduct after they went back together following the denial of the husband's prayer for a divorce the first time. The wife's testimony reveals that she is highly nervous. The husband is employed by Republic Steel Company, while his wife, a former cotton mill employee, tries to peddle cosmetics. The physician's testimony indicates that she will eventually become totally disabled.

It is our observation from the testimony that the husband was in no more danger from the conduct of his wife after the denial of a divorce than he was before they

went back together. After complainant and respondent separated in April, 1960, they had sexual intercourse twice, according to the testimony of the husband, as follows:

"Q. Have you actually had any sexual relations with her since the time you left in April of 1960?

"A. I think twice.

"Q. Twice? And when was the last occasion?

"A. About a month afterwards."

It is incredible that the husband, if he were subjected to reasonable apprehension of danger as he contends, would go back to the danger spot for further exposure when there was no compulsion or inducement except to embrace the "dangerous" wife in sexual pleasure. Except for a few scratches and some empty threats mentioned in the testimony of the husband, and denied by the wife, the record discloses no impetuous conduct on the part of the ailing wife. Campbell v. Campbell, 252 Ala. 487, 41 So. 2d 185(7); Sec. 22, Title 34, Code of 1940. The husband's own testimony that he had sexual relations with his wife after the last separation (April, 1960) discredits and refutes his contention of reasonable apprehension of violence, danger to his life or health, on the part of his wife.

We do not think the evidence sustains the allegation of violence and the decree of the trial court.

The foregoing opinion was prepared by B. W. SIMMONS, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

The decree is reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.